# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SUNSET MANAGEMENT, LLC § | |
| § | |
| § | CASE NO.  4:06cv18 (LEAD) |
| § | 4:06cv361 (Cons) |
| V. § | 4:06cv483 (Cons) |
| § | (Judge Schneider/Judge Bush) |
| § | |
| § | |
| AMERICAN REALTY § | |
| INVESTORS, INC, ET AL. § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

American Realty Trust, Inc. ("ART"), Basic Capital Management, Inc. ("BCM"), EQK Holdings, Inc. ("EQK"), and American Realty Investors, Inc. ("ARI") ("Borrowers") filed this complaint for violation of securities law against Sunset Management ("Sunset") and John Baldwin[1]. The Borrowers contend that a commercial note in the sum of $30,000,000 is actually a security and not a commercial note. All four Borrowers signed the note which is payable to Sunset Management LLC. The note contains two loan provisions, one for a base loan and the other for an auxiliary loan. Both loans total $30,000,000 but have different interest rate factors in the single secured promissory note. There is a built-in default rate of 28% if any payment is in default. The note is governed by Nevada law which all parties appear to agree allows interest rate charges called for in the note. All Borrowers represent that..."*this Note is good, valid, and in all respects free from all defenses, both*

---

[1] Plaintiffs in Cause No. 4:06cv483 are now Defendants in this consolidated action.

*in law and in equity,....*" The loans were secured by a lien on property owned by Art Williamsburg, Inc. ("AWI") in Virginia and a lien on 3,672,305 shares of stock in Transcontinental Realty, Inc. Borrowers contend that Sunset never expected them to be able to repay the note. Borrowers contend that there was a modification on the terms of repayment when the original note came due, but Sunset denies this. Essentially, Borrowers complain that there were "hidden" charges within the note and that Sunset's enforcement of the terms and provisions of the note were in violation of the agreed upon modification. All of which Sunset denies. Borrowers complain that the failure to "specifically disclose" the late fee and Sunset's usage of it at the outset of the lending transaction was deceptive. Borrowers claim this note is a "security" under the Securities and Exchange Act because it had a blended interest rate of 22.6% and that the collateral reasonably valued exceeded the loan in a large amount.

Because Borrowers assert fraud claims under the Securities Exchange Act of 1934 ("Exchange Act") section 10(b), they must also satisfy the heightened pleading requirements imposed by FED. R. CIV. P. 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u (1995) ("PSLRA"), to avoid dismissal. Rule 9(b) requires certain minimum allegations to be pled in securities fraud cases, including: the specific place, time, and content of the false representations; the identity of the individual making the false representations; and what that person gained from making the representations. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). Additionally, the PSLRA requires complaints in security fraud cases to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

The PSLRA also requires Borrowers to allege facts demonstrating scienter. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). Scienter is defined as a "mental state embracing an intent to deceive, manipulate or defraud." *Id.* The PSLRA requires complaints to state with particularity facts giving rise to a strong inference of scienter. 15 U.S.C. § 78u-4(b)(2); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001). Negligence alone is insufficient to support liability; however, severe recklessness suffices. *Id*. at 408-09. The defendant's motive and opportunity to commit fraud, alone, does not support a strong inference of scienter. *Id*. at 410-11. If the complaint does not plead scienter as required by the PSLRA, then the case must be dismissed. 15 U.S.C. § 78u-4(b)(3)(A); *Coates v. Heartland Wireless Comms., Inc.*, 55 F. Supp. 2d 628, 634 (N.D. Tex. 1999).

Rule 10b-5, promulgated under section 10(b) of the Exchange Act ("Rule 10b-5"), makes it unlawful for any person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5 (2002). To state a claim under Rule 10b-5, a plaintiff must allege the following in connection with the sale or purchase of securities: (1) an omission or misstatement, (2) of a material fact, (3) made with scienter, (4) on which the plaintiff relied, (5) that proximately caused the plaintiff's injury. *Nathenson*, 267 F.3d at 407. As previously discussed, Borrowers must also state with particularity facts giving rise to a strong inference of scienter, specifically identify the alleged misleading omissions or misrepresentations, and discuss the reasons why the statement or omission is misleading. *Id*. at 412. The Court finds that Borrowers have not met the heightened pleading standard, but in any event, the Court can dismiss because this is not a "securities case."

3

The loan agreement between the parties notes that the loan is for general working capital purposes. In addition, Borrowers also have agreed to indemnify Sunset for almost any action undertaken by Sunset, including its performance of the agreement or any loan documents or any claim or cause of action of any kind by any person which would have the effect of denying Sunset the full benefit or protection of any provision of the agreement or loan documents. 'Person' is broadly defined within the note to include Borrowers.

The case has a protracted history of litigation in state court, federal court and bankruptcy court. Three separate cases have now been consolidated into this action. At issue here is only Sunset's Motion to Dismiss (Dkt. No. 3 in 4:06cv483). If this note is not a security as defined under the Securities Law, then the Motion should be granted. This note is not a security.

The Exchange Act includes the phrase "any note ..." within its definition of a "security." 15 U.S.C. § 78c(a)(10). However, Congress did not enact the federal securities laws in order "to provide a broad federal remedy for all fraud," but rather intended "to regulate *investments,* in whatever form they are made and by whatever name they are called." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990) (citation omitted) (emphasis in original). The Supreme Court states that "the phrase 'any note' should not be interpreted to mean literally 'any note,' but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." *Id*. at 62-63. To that end, the Court adopted the so-called "family resemblance" test for determining whether a promissory note should be deemed a security under federal law. *Id*. at 64-65.

The family resemblance tests begins with the presumption that every note is a security. *Id*. at 67. This presumption can be rebutted if the note at issue strongly resembles one of a number of instruments that are commonly referred to as "notes" but have nonetheless been judicially

determined to be non-securities.[2] If an instrument does not bear a resemblance to any of the enumerated exceptions, the court must determine if it is of a type that should be added to the list by examining four factors identified in *Reves* as being indicative of non-security notes. *Id.* These factors consist of: (1) the motivations that would prompt a reasonable seller and buyer to enter into [the transaction]; (2) the 'plan of distribution' of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary. *Id.* at 66-67.

Under the first *Reves* factor, a note resembles a security "[i]f the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate." *Id*. at 66. By contrast, a note that "is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose" will "less sensibly [be] described as a 'security.'" *Id*. The court must look objectively at "the motivations that would prompt a reasonable seller and buyer to enter into [the transaction]." *Id*. If the surrounding motivations appear to be geared toward investment, then the instrument at issue is more likely a security. *Pollack v. Laidlaw Holdings. Inc.*, 27 F.3d 808, 812 (2nd Cir. 1994). Here, the avowed purpose of the note is to provide working capital to the Borrowers. The fact that AWI

---

[2]The Court identified the following instruments as being notes of the non-security variety: "the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, ... a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized)... [and] notes evidencing loans by commercial banks for current operations." *Reves*, 494 U.S. at 65 (citations omitted).

received no cash does not enhance its position. If AWI signed the note as an accommodation, such is sufficient.

The second factor also weighs in favor of Sunset. The note was not offered to the general public. It was not offered in a wholesale or potentially wholesale manner. In fact, it was not offered at all. The only profit from the note would relate to interest after the principal was repaid. The fact that the Borrowers agreed to an interest rate in conformity with Nevada law does not make it a security.

The third factor also weighs in favor of Sunset. No reasonable investor would think that the note is a security. The term of the note was short, one year, and is barely over the presumptive limitation period of nine months. The note offers no direct chance at profit. The face of the note is labeled a note, not an investment.

Under the fourth analysis, the Court finds that the factor weighs in favor of Sunset. The note was collateralized even though Borrowers contend it was excessively collateralized. The note is regulated by Nevada law and the parties agree that the note does not contravene Nevada law as it relates to interest charged.

A claim will not be dismissed unless the plaintiff (here borrowers) cannot prove any set of facts in support of its claim that would entitle it to relief. *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase*, 467 F.3d 466 (5th Cir. 2006). Here the claim should be dismissed. This is a note case and under no semblance of facts a security case.

Plaintiff's (Sunset's) Motion to Dismiss is granted.

## RECOMMENDATION

Based upon the foregoing, the Court recommends that Plaintiff's (Sunset's) Motion to Dismiss (Dkt. No. 3 in 4:06cv483) be **GRANTED**.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 8th day of March, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE